**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**DEMETRICE BENOR JOHNSON,**

    **Petitioner,**

**v.**                                             **Civil Action No. 3:12cv30
(Judge Groh)**

**KUMA DEBOO, Warden,**

    **Respondent.**

## REPORT AND RECOMMENDATION

### I. Background

On April 16, 2012, the *pro se* petitioner, an inmate at FCI Gilmer, filed an Application for Habeas Corpus Pursuant to 28 U.S.C. §2241 seeking prior custody credit toward his present federal sentence or its future term of supervised release, for time spent in federal custody for a prior sentence he alleges was later vacated.

The petitioner paid the filing fee on April 30, 2012. On May 1, 2012, the undersigned made a preliminary review of the petition and determined that summary dismissal was not warranted. Accordingly, an Order to Show Cause was issued against the respondent. On May 29, 2012, the respondent filed a Motion to Dismiss or, in the Alternative, for Summary Judgment. On June 7, 2012, a <u>Roseboro</u> Notice was issued, and on June 28, 2012, the petitioner filed his response.

### II. Facts

On January 7, 2000, petitioner was arrested by Michigan state authorities on a charge of Assault with Attempt to do Great Bodily Harm Less than Murder.[1] On March 16, 2000, he was

---

[1] Declaration of Andrew Roush, BOP Management Analyst, Dkt.# 12-1, ¶5 at 1, and November 9, 2011 email to BOP, Dkt.# 12-2 at 1.

1

borrowed by federal authorities, pursuant to a federal writ of habeas corpus *ad prosequendum*,[2] and on August 25, 2000, was sentenced to a term of thirty-three months imprisonment for Bank Fraud Conspiracy in the Eastern District of Michigan.[3] After sentencing, Petitioner was returned to Michigan's state custody with the federal judgment filed as a detainer.[4]

On September 27, 2000, Petitioner was sentenced by the state of Michigan to a term of sixty-seven months to ten years imprisonment for Assault with Attempt to do Great Bodily Harm Less than Murder. The state granted Petitioner 267 days (8.9 months) credit against his state sentence for the time already spent in custody.[5] On August 3, 2005, Petitioner was released by the state to the custody of the U.S. Marshal Service ("USMS") to begin serving his federal sentence.[6]

On January 5, 2006, the Bureau of Prisons ("BOP") prepared a letter to petitioner's federal sentencing court, requesting its position regarding a *nunc pro tunc* designation.[7] On June 9, 2006, the BOP and the government received an Order Granting Defendant's Motion for Release from Federal Custody from the Eastern District of Michigan, directing that petitioner's federal sentence be served concurrent with his state sentence, with the state prison to be the institution of designation.[8] This Order was entered, not in response to the January 5, 2006 *nunc*

---

[2] Roush Decl., Dkt.# 12-1, ¶6 at 1, and U.S.M.S. Individual Custody and Detention Report, Dkt.# 12-3 at 1.

[3] Roush Decl., Dkt.# 12-1, ¶7 at 1, and Judgment in Criminal Case No. 00-CR-50011-02-FL, Dkt.# 12-4 at 1.

[4] Roush Decl., Dkt.# 12-1, ¶7 at 1, and January 5, 2006 Letter to Sentencing Court, Dkt.# 12-5 at 1-2.

[5] Roush Decl., Dkt.# 12-1, ¶8 at 2, and November 9, 2011 email to BOP, Dkt.# 12-2 at 1.

[6] Roush Decl., Dkt.# 12-1, ¶9 at 2; November 9, 2011 email to BOP, Dkt.# 12-2 at 1; and U.S.M.S. Individual Custody and Detention Report, Dkt.# 12-3 at 1.

[7] Roush Decl., Dkt.# 12-1, ¶10 at 2, and January 5, 2006 BOP letter, Dkt.# 12-5 at 1 -2.

[8] Roush Decl., Dkt.# 12-1, ¶11 at 2, and June 9, 2006 Order Granting Defendant's Motion for Release from Federal Custody, Dkt.# 12-6 at 1-2.

*pro tunc* letter from the BOP, but pursuant to two motions filed by petitioner, a May 31, 2005 Motion to Clarify Judge Intent and an October 20, 2005 Motion for Release from Federal Custody. (Dkt.# 12-8 at 6).[9] In response to the June 9, 2006 Order from the Eastern District of Michigan, the United States immediately filed a June 9, 2006 Motion for Stay of Release from Federal Custody and a Motion for Reconsideration of Order Granting Defendant's Release from Federal Custody.[10] By Order entered June 14, 2006, the Eastern District of Michigan clarified that its June 9, 2006 Order, it had "inaccurately ordered that Defendant's sentence be served concurrent with the state sentence in order to comply with the intention of the state court judge," (Dkt.# 12-9 at 2); it granted the United States' Motion for Reconsideration and, because petitioner had already been released, denied as moot the Petitioner's Motion for Release from

---

[9] In the motions, petitioner asked the court to clarify its intent at the time of his August 25, 2000 sentencing, asking whether his sentence commenced on August 25, 2000. Apparently petitioner did not serve the U.S. Attorney's office with a copy of the motion. Almost 5 months later, on October 20, 2005, petitioner filed the second motion, styled Motion for Release from Federal Custody," this time serving a copy on the government. The motion sought an order "correcting his sentence" to commence on August 25, 2000, and alleged that the state court viewed him as a federal prisoner whose sentence was to be served concurrently with his federal sentence. (There apparently was a misunderstanding by the Michigan state court at the time of petitioner's August 25, 2000 sentencing. A review of the transcript of that hearing reveals that the court, defense counsel, and the prosecutor were all under the mistaken belief that petitioner had been taken into federal custody first, and that his state sentence was to be concurrent with the prior federal sentence, when in fact the state had arrested him first; his sentence had not yet been determined to be concurrent; and the federal sentence was to be a detainer on his state sentence). Petitioner's October 20, 2005 motion argued that "[c]ontrary to the clear intention of the Genessee County Circuit Court that defendant be allowed to serve the first portion of his state sentence while in federal custody," and alleged that the BOP "intends to imprison defendant for another 33 month period." Because the motion sought to "correct" petitioner's sentence, the government regarded it as a Motion to Vacate under 28 U.S.C. §2255, and, consistent with the Rules Governing §2255 Proceedings, waited for the Court to either summarily dismiss the motion or order it to respond. The Eastern District of Michigan did neither. Instead, in a June 9, 2006 Order Granting Defendant's Motion for Release from Federal Custody, the federal sentencing court, apparently taking the prisoner at his word, having received nothing in opposition to either motion (because the U.S. Attorney was unaware that the May 31, 2005 Motion to Clarify Judge Intent had been filed, and assumed that the October 20, 2005 Motion for Release from Federal Custody was a 2255 motion for which it needed court direction to file a response)**,** granted both motions, erroneously holding that the state court *had* ordered its sentence be served concurrent to petitioner's federal sentence, and stating that "it is the intention of this court to comply w/ intent of state court judge." The Order directed that that petitioner's federal sentence was to be served concurrent to the state sentence. (Motion for Reconsideration of Order Granting Defendant's Motion for Release from Federal Custody, (E.D. Mich. Dkt. # 65) (00-50011)); (3:12cv30 Dkt.# 12-8 at 6 – 9).

[10] Roush Decl., Dkt.# 12-1, ¶13 at 2, and United States' June 9, 2006 Motions, Dkt.# 12-8 at 1-11.

3

Custody.[11] The Court noted that petitioner had been brought into federal court from state custody on writ of habeas corpus *ad prosequendum*; received a 33-month sentence; was returned to state custody to receive a state sentence of 67 – 120 months; and then remained there serving a five year sentence, before being released back into federal custody to begin the 33-month federal sentence as a *consecutive, not concurrent*, sentence. Noting that, pursuant to its June 9, 2006 Order, petitioner had already been unintentionally released from his 33-month federal sentence[12] to begin his 3-year term of supervised release, the Court then recommended the *nunc pro tunc* designation,[13] which the BOP later granted, retroactively making the federal sentence concurrent with the state sentence.

Six and a half months after being released, on December 23, 2006, petitioner committed a host of new crimes, for which he was arrested by Michigan state authorities on March 7, 2007 and charged with: Count 1, Assault with Intent to Commit Murder; Count 2, Weapons Firearm-Discharge from a Vehicle; Count 3, Felon in Possession of a Firearm; and Count 4, Felony Firearm and Habitual Offender.[14] On June 19, 2007, the state of Michigan sentenced petitioner to twenty-two months to fifteen years imprisonment on Counts 2 and 3, and to two years imprisonment on Count 4, consecutive to the term of imprisonment imposed on Counts 2 and 3.[15]

---

[11] Roush Decl., Dkt.# 12-1, ¶14 at 2, and June 14, 2006 E.D. Mich. Order, Dkt.# 12-9 at 1-3.

[12] Due to the error, petitioner was released from his federal prison on or about June 9, 2006, over eighteen and a half months earlier than he should have been, given his then-projected release date of December 25, 2007.

[13] Roush Decl., Dkt.# 12-1, ¶12 at 2, and BOP Notice of Release and Arrival, Dkt.# 12-7 at 1.

[14] Roush Decl., Dkt.# 12-1, ¶15 at 2, and July 11, 2007 Letter from the United States Probation Office ("USPO") to federal sentencing judge, Dkt.# 12-10.

[15] Roush Decl., Dkt.# 12-1, ¶15 at 2, and July 11, 2007 Letter from the United States Probation Office ("USPO") to federal sentencing judge, Dkt.# 12-10. Petitioner was found not guilty of Count 1, Assault With Intent to Commit Murder. Dkt.# 12-10 at 2.

On August 2, 2007, petitioner was borrowed from state custody pursuant to a federal writ of habeas corpus *ad prosequendum* from the State of Michigan, for his initial court appearance on his supervised release violations.[16] On August 9, 2007, he was sentenced by the Eastern District of Michigan to twenty-four months imprisonment to be followed by one year of supervised release, for the violations of supervised release, to be served consecutive to the state sentence.[17] He was returned to state custody following sentencing.[18]

Petitioner completed his state sentence on October 18, 2011, and was released to the USMS to begin service of his 24-month federal sentence.[19] In the 24-month sentence computation the BOP prepared for petitioner, petitioner's sentence commenced on October 18, 2011, the day his state sentence was completed, with no prior custody credit.[20]

The petitioner's projected release date is July 15, 2013, via good conduct time release. (Dkt.# 12-13 at 1).

### III. Contentions of the Parties

#### A. The Petition

Petitioner argues that because the sentencing court "vacated" his federal judgment in June, 2006 after he had already served nine more months than he should have on a 33-month federal sentence that was to be concurrent with his state sentence, he is entitled to have those

---

[16] Roush Decl., Dkt.# 12-1, ¶16 at 2, and Writ of Habeas Corpus *ad Prosequendum*, Dkt.# 12-11).

[17] Roush Decl., Dkt.# 12-1, ¶17 at 2, and Judgment in Criminal Case No. 00-CR-50011-2, Dkt.# 12-12 at 2 - 3).

[18] Roush Decl., Dkt.# 12-1, ¶18 at 2, and U.S.M.S. Individual Custody and Detention Report, Dkt.# 12-3).

[19] Roush Decl., Dkt.# 12-1, ¶19 at 2, and U.S.M.S. Individual Custody and Detention Report, Dkt.# 12-3).

[20] Roush Decl., Dkt.# 12-1, ¶20 at 3, and Sentencing Monitoring Computation Data, Dkt.# 12-13 at 2).

nine months credited toward his present sentence or alternatively, his future term of supervised release.

As relief, he requests that his supervised release be equitably tolled to a term vacated and he be credited with all time served prior to the vacated sentence.

**B. The Respondent's Motion to Dismiss, or In the Alternative, for Summary Judgment**

The respondent contends that the petition should be dismissed because petitioner has failed to state a claim upon which relief can be granted, arguing that

1) petitioner's federal judgment and/or sentence was not "vacated;" the sentencing court merely clarified that his federal sentence would run concurrent with his state sentence. By subsequent Order, the sentencing court noted it could only *recommend* that the sentences run concurrently, and denied petitioner's motion for release from custody. However, petitioner did receive a *nunc pro tunc* designation from the BOP, so the June 9, 2006 date remained his effective release date;

2) the time petitioner spent in custody prior to his release from BOP custody on June 9, 2006 was already credited against his previous 33-month sentence for Bank Fraud Conspiracy; and

2) thus petitioner is not entitled to any prior custody credit on his present 24-month sentence for violations of supervised release; to award it to him would give him double credit for his detention time.

**C. Petitioner's Memorandum of Law in Support of Counterclaims Response to Respondent's Motion to Dismiss, or, in the Alternative A Motion for Summary Judgment**

In his response, the petitioner reiterates his claim that the BOP miscalculated his release date, attempts to refute the respondent's arguments on the same, and insists that he is entitled to immediate release from custody.

### IV. Standard of Review

**A. Motion to Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the

applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," Id. (citations omitted), to one that is "plausible on its face," Id. at 570, rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir. 2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a

"claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

**B. <u>Summary Judgment</u>**

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases. See Blackledge v. Allison, 431 U.S. 63, 80 (1977). So too, has the Fourth Circuit Court of Appeals. Maynard v. Dixon, 943 F.2d 407 (4th Cir. 1991). Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v. Federal Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242-252 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987).

Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson, 477 U.S. at 248. It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Industrial Co. V. Zenith Radio Corp., 475 U.S. 574, 587-88 1986.

## V. Analysis

The convoluted facts and petitioner's inartful pleadings, liberally construed, appear to argue that he is entitled to have nine months prior custody credit applied against the 24-month term of imprisonment he is presently serving for his violations of the supervised release from his previous federal sentence. Alternatively construed, he argues he is entitled to have nine months prior custody credit applied to the one-year term of supervised release he will be required to serve once released, to compensate him for the extra time he spent in federal custody serving a previous federal sentence which he contends was "vacated" on June 9, 2006.

Review of the petitioner's contentions must start with the basic premise that a federal sentence commences "on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a). Therefore, the mere fact that a defendant has been sentenced in federal court does not commence his sentence. The Attorney General, through the Federal Bureau of Prisons, is responsible for computing federal terms of imprisonment. See United States v. Wilson, 503 U.S. 329 (1992). In making this computation, the BOP must adhere to 18 U.S.C. § 3585(b), which provides:

> A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences (1) as a result of the offense for which the sentence was imposed or (2) as a result of any other charge for which the defendant was arrested after the

9

commission of the offense for which the sentence was imposed; **that has not been credited against another sentence.**

(emphasis added).

The United States Supreme Court has held that under 18 U.S.C. § 3585(b), "Congress made clear that a defendant could not receive double credit for his detention time." Wilson, *supra* at 337. Therefore, under 18 U.S.C. § 3585(b), prior custody credit cannot be awarded if the prisoner has received credit towards another sentence. See United States v. Brown, 977 F.2d 574 (4th Cir. 1992)(Defendant may receive credit against his federal sentence for time spent in official detention prior to the date his sentence commences **unless it has been credited against another sentence**)(emphasis added); U.S. v. Goulden, 54 F.3d 774 (4th Cir. 1995)(credit is only available for time spent in custody which has not been credited against another sentence).

The controlling statute for supervision after release is 18 U.S.C. § 3624(e), which provides in part:

> The term of supervised release commences on the day the person is released from imprisonment and runs concurrently with any Federal, State, or local term of probation or supervised release or parole for another offense to which the person is subject or becomes subject during the term of supervised release. **A term of supervised release does not run during any period in which the person is imprisoned in connection with a conviction for a Federal, State, or local crime unless the imprisonment is for a period of less than 30 consecutive days** . . . .

18 U.S.C. § 3624(e)(emphasis added).

Key to interpreting this statutory language are the words "released from imprisonment," which, given its plain meaning, indicates that a prisoner must first be freed from confinement before his supervised release may commence. Based on § 3624(e), petitioner's supervised release cannot begin until he is released from custody. Thus, even if he were entitled to prior custody credit, which he is not, he could not have it applied toward his future one-year term of

supervised release, because to do so would defeat the purpose of supervised release. The Supreme Court has held that granting prior custody credit against a term of supervised release undermines Congress' aim of having a period of supervised release to enable convicted felons to transition from incarceration to community life. See United States v. Johnson, 529 U.S. 53 (2000)("the objectives of supervised release would be unfulfilled if excess prison time were to offset and reduce terms of supervised release").

Here, petitioner's characterization of his previous federal sentence as "vacated" is misleading. The sentence was not "vacated." It was only because of a series of errors that the sentencing court, acknowledging that it had inadvertently released petitioner (over eighteen and a half months before he was entitled to be released) from his previous 33-month sentence, recommended that his federal sentence run concurrent with his state sentence. The petitioner's state sentence ran continuously from September 27, 2000, when he was sentenced, until its expiration on August 3, 2005. Petitioner has already received the "nine months" prior custody credit he is seeking when 267 days (or 8.9 months) prior custody credit was applied against his earlier state sentence, to compensate for the time he spent in detention from January 7, 2000, the date of his arrest on the state charges, until September 27, 2000, the date of sentencing on the state charges, which included the time spent in federal custody pursuant to the writ *ad prosequendum* from March 16, 2000 and August 25, 2000. Because the petitioner cannot receive double credit, he is not entitled to any credit for this time against either his present federal sentence or its future term of supervised release. The August 9, 2007 sentencing court specifically noted that the petitioner was entitled to no prior custody credit on his present 24-month sentence, which he began serving on October 18, 2011. Because the prior custody credit

11

was already applied to his previous state sentence, under 18 U.S.C. § 3585(b), petitioner is not entitled to have it applied again to his present federal sentence.

## IV. Recommendation

Based on the foregoing, the undersigned recommends that the respondent's Motion to Dismiss or, in the Alternative, for Summary Judgment (Dkt.# 11) be **GRANTED** and petitioner's §2241 petition (Dkt.# 1) be **DENIED and DISMISSED WITH PREJUDICE**.

**Within fourteen (14) days** of being served with a copy of this Recommendation, **or by December 18, 2012**, any party may file with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the United States District Judge. **Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket sheet. The Clerk of the Court is further directed to provide a copy of this Report and Recommendation to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Filing in the United States District Court.

DATED: December 4, 2012

/s/ James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE