**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG**


**DEMETRICE BENOR JOHNSON,**

      Petitioner,

**v.**                              **CIVIL ACTION NO. 3:12-CV-30
                                         (JUDGE GROH)**

**KUMA DEBOO, Warden,**

      Respondent.


**ORDER ADOPTING REPORT AND RECOMMENDATION**

**I.**    **Introduction**

On this day, the above-styled matter came before the Court for consideration of the

Report and Recommendation of United States Magistrate Judge James E. Seibert.  By

local rule, this action was referred to Magistrate Judge Seibert for submission of a

proposed report and recommendation ("R&R"). Magistrate Judge Seibert filed his R&R on

December 4, 2012 [Doc. 19].  In that filing, the magistrate judge recommended that this

Court grant the Respondent's Motion to Dismiss or, in the Alternative, for Summary

Judgment [Doc. 11], and deny and dismiss with prejudice the Petitioner's Petition for Writ

of Habeas Corpus Pursuant to 28 U.S.C. §2241 [Doc. 1].

The Petitioner is currently incarcerated at FCI Gilmer in Glenville, West Virginia,

within the geographical bounds of the United States District Court for the Northern District

of West Virginia.  Pursuant to 28 U.S.C. §2241(d), a petition for writ of habeas corpus "may

be filed in the district court for the district wherein such person is in custody or the district

court for the district within which the State court was held which convicted and sentenced

him and each of such district courts shall have concurrent jurisdiction to entertain the application."

Pursuant to 28 U.S.C. §636(b)(1)(c), this Court is required to make a *de novo* review of those portions of the magistrate judge's findings to which objection is made. However, the Court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed. ***Thomas v. Arn***, 474 U.S. 140, 150 (1985). In addition, failure to file timely objections constitutes a waiver of *de novo* review and the Petitioner's right to appeal this Court's order. 28 U.S.C. §636(b)(1); ***Snyder v. Ridenour***, 889 F.2d 1363 (4th Cir. 1989); ***United States v. Schronce***, 727 F.2d 91, 94 (4th Cir. 1984). Here, objections to Magistrate Judge Seibert's R&R were due within fourteen (14) days after being served with a copy of the R&R pursuant to 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 72(b). Per the return receipt on file with the District Clerk's office, service of the R&R was accepted on December 6, 2012. Objections were thus due by December 24, 2012. *See* 28 U.S.C. §636(b)(1); FED. R. CIV. P. 72(b); FED. R. CIV. P. 6(a)(3)(A); FED. R. CIV. P. 6(d) (adding three mailing days). The Petitioner filed his objections on December 28, 2012. However, given operation of the "mailbox rule" of ***Houston v. Lack***, 487 U.S. 266 (1988), wherein a document is deemed filed by a prisoner when it is delivered to prison officials for mailing, the Court finds that the Petitioner's objections are timely. Accordingly, the Court will undertake a *de novo* review of those portions of the magistrate judge's findings to which objection is made. The Court will review the remainder of the R&R for clear error.

2

## II.   Factual and Procedural History

### A.   Prior Proceedings

On January 7, 2000, the Petitioner was arrested by Michigan state authorities and charged with Assault with Attempt to do Great Bodily Harm Less Than Murder.  On March 16, 2000, while in state custody, he was borrowed by federal authorities, pursuant to a federal writ of habeas corpus *ad prosequendum*, and on August 25, 2000, he was sentenced by the United States District Court for the Eastern District of Michigan to a term of thirty-three (33) months imprisonment for Bank Fraud Conspiracy.  After sentencing, the Petitioner was returned to Michigan's state custody with the federal judgment filed as a detainer.

On September 27, 2000, the Petitioner was sentenced by the State of Michigan to a term of sixty-seven (67) months to ten (10) years imprisonment for Assault with Attempt to do Great Bodily Harm Less than Murder.  The state granted the Petitioner 267 days credit against his state sentence for time he had already spent in custody.  On August 3, 2005, the Petitioner was released by the state to the custody of the United States Marshals Service ("USMS") to begin serving his federal sentence.

On May 31, 2005, the Petitioner filed a "Motion to Clarify Judge Intent" in the federal sentencing court.  On October 20, 2005, the Petitioner filed a "Motion for Release from Federal Custody."  Through these motions, the Petitioner asked the federal sentencing court to clarify its intent at the time of the Petitioner's August 25, 2000 sentencing with regard to whether the Petitioner's federal sentence was to have run concurrently with his state sentence.  Apparently the Petitioner did not serve the United States Attorney's office with a copy of the May 31, 2005 motion, but did serve the Government with a copy of the

3

October 20, 2005 motion.  The Petitioner sought an order "correcting his sentence" to commence on August 25, 2000, and alleged that the state court viewed him as a federal prisoner whose state sentence was to be served concurrently with his federal sentence.

On January 5, 2006, the federal Bureau of Prisons ("BOP") drafted a letter to the federal sentencing court, seeking the court's position regarding a *nunc pro tunc* designation for the Petitioner.

In reviewing the transcript from the state court proceeding, it is apparent that there was a misunderstanding by the state court judge at the time of the Petitioner's August 25, 2000 sentencing.  The court, defense counsel, and the prosecutor were all under the mistaken belief that the Petitioner had been taken into federal custody first, when in fact the state had arrested him first, his federal sentence had not yet been determined to be concurrent, and the federal sentence was to be a detainer on the Petitioner's state sentence.

The Petitioner's October 20, 2005 motion argued that "[c]ontrary to the clear intention of [the state court] that defendant be allowed to serve the first portion of his state sentence while in federal custody," the BOP "intend[ed] to imprison the defendant for another 33 month period."  Because the motion sought to "correct" the Petitioner's sentence, the Government regarded it as a motion to vacate under 28 U.S.C. §2255, and, consistent with the Rules Governing §2255 Proceedings, waited for the court to either summarily dismiss the motion or order the Government to respond.  The federal sentencing court did neither.

Instead, in a June 9, 2006 Order Granting Defendant's Motion for Release from Federal Custody, the federal sentencing court granted both of the Petitioner's motions,

4

holding that the state court *had* ordered its sentence to be served concurrent to the Petitioner's federal sentence, and stating that "it is the intention of this court to comply with the intent of the state court judge." The order directed that the Petitioner's federal sentence was to be served concurrently with the state sentence.

In response to the June 9, 2006 order from the Eastern District of Michigan, the Government filed a June 9, 2006 Motion for Stay of Release from Federal Custody and a Motion for Reconsideration of Order Granting Defendant's Release from Federal Custody. By order dated June 14, 2006, the federal sentencing court clarified that in its June 9, 2006 order, it had "inaccurately ordered that [the Petitioner's] sentence be served concurrent with the state sentence in order to comply with the intention of the state court judge." The federal sentencing court granted the Government's Motion for Reconsideration and, because the Petitioner had already been released, denied as moot the Petitioner's Motion for Release from Custody. The court noted that the Petitioner had been brought into federal court from state custody on a writ of habeas corpus *ad prosequendum*, received a thirty-three (33) month federal sentence, was returned to state custody to receive a state sentence of sixty-seven (67) to one hundred twenty (120) months, and then remained in state custody serving a five year sentence, before being released back into federal custody to begin a thirty-three (33) month federal sentence which was to run *consecutive*, as opposed to *concurrent*, with the state sentence. Because the Petitioner had already been unintentionally released from his thirty-three (33) month federal sentence to begin his three year term of supervised release, the federal sentencing court recommended to the BOP the *nunc pro tunc* designation, which the BOP later granted, retroactively making the federal sentence concurrent with the state sentence.

5

On March 7, 2007, while the Petitioner was still on supervised release, he was arrested by Michigan state authorities and charged with a new series of crimes committed on December 23, 2006, including:  Count I, Assault with Intent to Commit Murder, Count II, Weapons Firearm-Discharge from Vehicle, Count III, Felon in Possession of a Firearm, and Count IV, Felony Firearm and Habitual Offender.  On June 19, 2007, the State of Michigan sentenced the Petitioner to twenty-two (22) months to fifteen (15) years imprisonment on Counts II and III, and to two years imprisonment on Count IV, consecutive to the term of imprisonment imposed in Counts II and III.

On August 2, 2007, the Petitioner was borrowed from state custody pursuant to a federal writ of habeas corpus *ad prosequendum* for an initial appearance on his federal supervised release violations which were based upon his recent state conviction.  On August 9, 2007, he was sentenced by the Eastern District of Michigan to twenty-four (24) months imprisonment to be followed by one year of supervised release, to be served consecutive with his state sentence.  He was returned to state custody following sentencing.

The Petitioner completed his second state sentence on October 18, 2011, and was released to the USMS to begin service of his twenty-four (24) month federal sentence.  In the twenty-four (24) month sentence computation the BOP prepared for the Petitioner, the Petitioner's sentence commenced on October 18, 2011, the day his state sentence was completed, with no prior custody benefit.  The Petitioner's projected date of release is July 15, 2013, assuming good conduct.

## B.    The Instant Proceedings

On April 16, 2012, the Petitioner filed the instant Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. §2241 [Doc. 1].  The Petitioner alleges one ground in support of his petition:  that he is entitled to have nine months credited towards his present sentence or, alternatively, his future term of supervised release, because the sentencing court "vacated" his federal judgment in June 2006, after he had already served nine more months than he should have on a thirty-three (33) month federal sentence.  As relief, the Petitioner requests that the Court "equitably toll supervised release to a term vacated and accredit[ ]] all time serve[d] prior to sentence [being] vacated."[1]

On April 17, 2012, the Petitioner was granted leave to proceed *in forma pauperis*. On May 1, 2012, the magistrate judge issued an order to show cause, to which the Government filed a response on May 29, 2012, in the form of a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment [Doc. 11].  On June 7, 2012, the Petitioner was given the opportunity to file responsive materials pursuant to ***Roseboro v. Garrison***, 528 F.2d 309 (4th Cir. 1975) [Doc. 13], and on June 28, 2012, he filed a response [Doc. 15]. On December 4, 2012, the magistrate judge filed his R&R [Doc. 19].  On December 28, 2012, the Petitioner filed his objections [Doc. 21].

The Government argues that the Petitioner's federal sentence was not "vacated," and that the time the Petitioner spent in custody prior to his release from BOP custody on June 9, 2006 was already credited against his previous thirty-three (33) month sentence

---

[1]

The *pro se* Petitioner's pleadings and briefings are understandably inartful.  The Court has fairly endeavored to construe and condense the Petitioner's contentions.

7

for Bank Fraud Conspiracy.

III.    **Discussion**

      A.    **Standard of Review**

          1.    *Motion to Dismiss*

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." ***Republican Party of N.C. v. Martin***, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure §1356 (1990)).  In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff.  ***Mylan Labs, Inc. v. Matkari***, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also* ***Martin***, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" ***Bell Atl. Corp. v. Twombly***, 550 U.S. 544, 555 (2007) (quoting ***Conley v. Gibson***, 355 U.S. 41, 47 (1957)). Courts have long cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." ***Conley***, 355 U.S. at 45-46.  In ***Twombly***, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  ***Conley***, 550 U.S. at 555 (citations omitted).

Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.* (citations omitted), to one that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 279, 281 (4th Cir. 2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in *Ashcroft v. Iqbal*, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. *Id.*

### 2.    *Summary Judgment*

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in a habeas case. See *Blackledge v. Allison*, 431 U.S. 63, 80 (1977). So too, has the Fourth Circuit Court of Appeals. *Maynard v. Dixon*, 943 F.2d 407 (4th Cir. 1991). Pursuant to Rule 56 (c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Motions for summary judgment impose a difficult standard on the moving party, for

9

it must be obvious that no rational trier of fact could find for the nonmoving party. **Miller v. Federal Deposit Ins. Corp.**, 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242-252 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." **Id.** "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." **Felty v. Graves-Humphreys Co.**, 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. **Anderson**, 477 U.S. at 248.   It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motions. **Matsushita Elec. Industrial Co. v. Zenith Radio Corp.**, 475 U.S. 574, 587-88 (1986).

### B.    Analysis

The Petitioner's primary objection to the magistrate judge's R&R appears to focus on the calculation of his federal sentence in 2005 and the sentencing state and/or federal judges' intent with regard to whether or not the Petitioner's state and federal sentences were to be run concurrently or consecutively.  However, from review of the record it is clear that the Petitioner's assertion of the facts is misleading in several respects.

First, there appears to have been a misunderstanding by the state court judge as to the procedural posture  of the Petitioner's federal proceedings.  The relevant portion of the transcript, which the Petitioner attached to the Motion for Release from Custody which

he filed in the Eastern District of Michigan on October 20, 2005, as Exhibit D, reads:

THE COURT: There's going to be a penalty and a price to pay for this. But you will do the time, and you will get out and you will go on with your life. Mr. Green [the victim] is going to live with the consequences of this for the rest of his life. This was a serious injury. It could have resulted in death.

Under the circumstances and the history that you bring here which includes repetition of assaultive offenses, I have to conclude that the maximum sentence ought to be imposed.

It is the sentence of this Court, Mr. Johnson, that you be bound over to the jurisdiction of the Michigan Corrections Commission for a period of not less than 67 months nor more than 10-years. You will receive credit for 267 days that you have been in custody.

You have a right to be represented by an attorney for any post-conviction . . . .

Mr. Grant [defendant's attorney], is Mr. Johnson in the custody of the federal—

MR. GRANT: Yes, Your Honor.

THE COURT: —government?

MR. GRANT: Yes, Your Honor.

THE COURT: Mr. Latchana [prosecutor]?

MR. LATCHANA: Yes, Judge.

THE COURT: Is this consecutive or concurrent?

11

| MR. LATCHANA: | I believe it is concurrent, Judge. The federal matter— |
|---|---|
| MR. GRANT: | Was after. |
| MR. LATCHANA: | —arose after this incident occurred. |
| THE COURT: | Okay. |

Of course, the Petitioner was not actually in federal custody at the time he was sentenced on his state charges—after his federal sentencing, the Petitioner was returned to Michigan's state custody with the federal judgment filed as a detainer.[2]  Given the doubt surrounding the state judge's understanding, it is difficult to ascertain exactly what the state judge's intent was, but there is nothing in the foregoing transcript to suggest that the state judge specifically intended for the Petitioner's state sentence to run concurrently with the Petitioner's federal sentence.  This is precisely what the federal sentencing judge found in his June 14, 2006 Order Granting the Government's Motion for Reconsideration, where the federal sentencing judge stated that he had "inaccurately ordered that [the Petitioner's] sentence be served concurrent with the state sentence in order to comply with the intention of the state court judge."  In any event, "a federal sentencing court has no obligation to implement or otherwise to respect a state court's order that state and federal sentences run

---

2

*See, e.g.,* ***Lee v. Wilson***, 2012 WL 3069407 at *4 (E.D. Va. July 26, 2012) ("As a general rule, when an inmate is facing sentences imposed by both federal and state authorities, the sovereign that first arrested the inmate retains primary custody over him until that sovereign's imposed sentence is satisfied.  In cases . . . where federal authorities need to obtain custody over a state inmate to try him for federal crimes, federal authorities issue a writ of habeas corpus *ad prosequendum*.  This writ does not change the inmate's primary jurisdiction status but merely allows federal authorities to 'borrow' the inmate for court proceedings, with the understanding that the inmate will be returned to the state to complete his state sentence at the conclusion of the federal proceedings.") (internal citations omitted).

concurrently." ***Thomas v. Whalen***, 962 F.2d 358, 362 n. 6 (4th Cir. 1992).

Second, the Petitioner's assertion that his federal sentence was "vacated" for being "constitutionally infirm" is incorrect.  The record clearly establishes that the Petitioner's October 20, 2005 Motion For Release From Federal Custody was construed by the Government as a §2255 motion, and the Government therefore did not respond.  The federal sentencing court, having received no response from the Government, granted the Petitioner's motion insofar as the federal sentencing court sought to comply with the intent of the state court judge, and mistakenly believed that the state court judge had intended for the Petitioner's state sentence to run concurrent with his federal sentence.  Once the federal sentencing court became aware of its misunderstanding with regard to the state court judge's intention, it reversed course and granted the Government's motion for reconsideration.  Of course, by that time, the Petitioner had already been released.  Therefore, the federal sentencing court recommended to the BOP that the Petitioner be given the *nunc pro tunc* designation.

Far from constituting a vacation of the federal sentencing court's sentence, the circumstances surrounding the Petitioner's release from federal custody in 2006 can best be characterized as "a lucky break," one which the Petitioner failed to capitalize on when he violated the terms of his supervised release shortly thereafter.

As an initial matter, a federal court does not have authority to designate the relationship of its sentence to another sentence which has not yet been imposed.  *See* ***Romandine v. United States***, 206 F.3d 731, 737-38 (7th Cir. 2000).  However, silence by the federal sentencing court regarding concurrency creates a presumption that the

13

sentences will be served consecutively.  *See, e.g., **United States v. Blue***, 874 F.Supp.

409, 413 (D.D.C. 1995).

Following a federal conviction and sentencing, the United States Attorney General,

acting through the BOP, is responsible for calculating the inmate's term of confinement,

including a determination of when the sentence commences.  ***United States v. Wilson***,

503 U.S. 329, 334 (1992).  In making this computation, the BOP must adhere to 18 U.S.C.

§3585(b), which provides that:

> A defendant shall be given credit toward the service of a term
> of imprisonment for any time he has spent in official detention
> prior to the date the sentence commences: (1) as a result of
> the offense for which the sentence was imposed; or (2) as a
> result of any other charge for which the defendant was arrested
> after the commission of the offense for which the sentence was
> imposed; *that has not been credited against another sentence.*

(emphasis added).

"Congress [has] made clear that a defendant [may] not receive a double credit for

his detention time."  ***Wilson***, 503 U.S. at 337; *see also **United States v. Brown***, 977 F.2d

574 (4th Cir. 1992).  The time the Petitioner spent in custody from August 3, 2005, up to

his release from the custody of the BOP on June 9, 2006, was credited against his thirty-

three (33) month federal sentence, because the order by the federal sentencing court

releasing the Petitioner from federal custody was not signed until June 9, 2006, and until

that time, the Petitioner was rightfully incarcerated and there was no legal basis for the

Petitioner's release.[3]  Accordingly, there exists no prior custody credit to be awarded.

---

[3]

It is clear to the Court that the federal sentencing court's recommendation to the
BOP of *nunc pro tunc* designation for the Petitioner was in response to the oversight which
occurred when the federal sentencing court, in its own words, "inaccurately ordered that

Moreover, the controlling statute for supervision after release is 18 U.S.C. §3624(e), which provides, in pertinent part, that:

> The term of supervised release commences on the day the person is released from imprisonment and runs concurrently with any Federal, State, or local term of probation or supervised release or parole for another offense to which the person is subject or becomes subject during the term of supervised release. A term of supervised release does not run during any period in which the person is imprisoned in connection with a conviction for a Federal, State, or local crime unless the imprisonment is for a period of less than 30 consecutive days . . . .

---

[the Petitioner's] sentence be served concurrent with the state sentence in order to comply with the intention of the state court judge."  By the time the federal sentencing court reconsidered the matter on June 14, 2006, the Petitioner had already been released, hence the *nunc pro tunc* recommendation to the BOP.

Pursuant to 18 U.S.C. §3621(b), the BOP has the authority to designate the facility at which a prisoner is to serve a federal sentence, and in this regard it has "wide discretion."  *See Mack v. Stansberry*, 2011 WL 3320742 at *3 (E.D. Va. July 29, 2011) (citing *Barden v. Keohane*, 921 F.2d 476 (3d Cir. 1990)).  While it is within the BOP's discretion to designate a state facility where an inmate previously served a state sentence as the place of his federal incarceration *nunc pro tunc*, there is no requirement that it must grant such a request.  *Id.* (citing *Barden, supra,* at 483).  Federal habeas review of the BOP's decision in such an instance is highly deferential, and once the BOP has considered the request, judicial consideration is limited to whether an abuse of discretion occurred under §3621.  *Id.*  So long as the BOP undertakes an individualized review of an inmate's case and makes a decision to deny a request for designation *nunc pro tunc* after analyzing the five relevant factors prescribed by §3621, habeas corpus relief from its determination is unavailable.  *Id.*

The five relevant factors prescribed by 18 U.S.C. §3621 are: (1) the resources of the facility contemplated; (2) the nature and circumstances of the offense; (3) the history and characteristics of the prisoner; (4) any statement by the court that imposed the sentence concerning the purposes for which the sentence to imprisonment was determined to be warranted, or recommending a type of penal or correctional facility as appropriate; and (5) any pertinent policy statement issued by the Sentencing Commission pursuant to 28 U.S.C. §994(a)(2).

The federal sentencing's court's recommendation of *nunc pro tunc* designation for the Petitioner was thus merely one of five factors that the BOP considered in making an administrative decision with regard to the Petitioner's sentence.  The Petitioner's sentence was not vacated by the federal sentencing court; indeed, the Petitioner's Motion for Release from Federal Custody was denied on reconsideration.

Section 3624(e) "directs that a supervised release term does not commence until an individual 'is released from imprisonment' . . . [t]o say [that one is] released while still imprisoned diminishes the concept the word intends to convey." ***United States v. Johnson***, 529 U.S. 53, 57 (2000).[4]  Thus, even if the Petitioner were entitled to prior custody credit, he could not have it applied toward his future one-year term of supervised release.

Therefore, the Court concludes that the Petitioner is not entitled to a prior custody credit, either for his current term of incarceration or for his future term of supervised release.  The Petitioner's objections are accordingly **OVERRULED**.

## IV.   <u>Conclusion</u>

Upon careful review of the R&R, it is the opinion of this Court that the magistrate judge's Report and Recommendation **[Doc. 19]** should be, and hereby is, **ORDERED ADOPTED** for the reasons more fully stated in that report.  Further, the Petitioner's Objections **[Doc. 21]** are **OVERRULED**.  Accordingly, the Petitioner's Petition for Habeas Corpus Pursuant to 28 U.S.C. §2241 **[Doc. 1]** is hereby **DENIED** and **DISMISSED WITH PREJUDICE** for the same reasons as stated above.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record and to

---

[4]In ***Johnson***, the Supreme Court held that "[t]he objectives of supervised release would be unfulfilled if excess prison time were to offset and reduce terms of supervised release.  Congress intended supervised release to assist individuals in their transition to community life." ***Johnson***, 529 U.S. at 59.

mail a copy to the *pro se* Petitioner.  Pursuant to Fed. R. Civ. P. 58, the Court directs the

Clerk to enter a separate judgment.

**DATED:** February 11, 2013.

_____
GINA M. GROH
UNITED STATES DISTRICT JUDGE